## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | : |
| Petitioner, | : |
| | : |
| v. | : Case No. |
| | : |
| DOMSEY TRADING CORPORATION, DOMSEY FIBER CORPORATION, DOMSEY INTERNATIONAL SALES CORPORATION, a Single Employer, ARTHUR SALM, PETER SALM, FORTUNA EDERY, individually and as EXECUTRIX of the ESTATE of ALBERT EDERY, deceased, | : |
| | : |
| Respondents, | : |
| | : |
| and | : |
| | : |
| NORTHERN TRUST BANK, and MERRILL LYNCH PIERCE FENNER & SMITH | : |
| | : |
| Garnishees. | : |

*JOHNSON, J*

### *EX PARTE* APPLICATION FOR PRE-JUDGMENT WRITS OF GARNISHMENT AND PROTECTIVE RESTRAINING ORDER

The National Labor Relations Board ("the Board"), an independent agency of the United States Government, hereby makes application pursuant to the Federal Debt Collection Procedures Act of 1990 ("FDCPA"), 28 U.S.C. §§ 3011, 3013, 3101 and 3104, and Local Rule 6.1, for issuance of prejudgment Writs of Garnishment and a Protective Restraining Order.  The instant Application and the assertions made herein

1

are supported by the accompanying Affidavit of Attorney Aggie Kapelman of the Board's Region 29 in Brooklyn, New York ("Kapelman Aff."[1]).

## I. JURISDICTION

1. This Court has jurisdiction of this matter under 28 U.S.C. §1345.

2. At material times, Respondents Domsey Trading Corporation ("Domsey Trading"), Domsey Fiber Corporation ("Domsey Fiber") and Domsey International Sales Corporation ("Domsey Sales"), each incorporated in the State of New York, operated as a single integrated enterprise with a principal place of business located at 431 Kent Avenue, Brooklyn, New York ("the Kent Avenue property"), within this Court's jurisdiction. [Kapelman Aff. para 2].

3. At times material to this proceeding, Respondent Arthur Salm resided at 137 Horseshoe Road, Mill Neck, New York, within this Court's jurisdiction. Since approximately February 2005, Arthur Salm has resided in Florida and is currently living in Delray Beach, Florida. [Kapelman Aff. note 17].

4. Respondent Peter Salm resides at 465 East Shore Road, Kings Point, New York, within the jurisdiction of this Court. [Kapelman Aff. para 21, note 23].

5. Respondent Fortuna Edery resides at 211 East 70th Street, Apt. 8H, New York, New York, within the jurisdiction of the United States District Court for the Southern District of New York. [Kapelman Aff. para. 15, note 15].

## II. BACKGROUND AND BASES OF THE BOARD'S CLAIMS

### A. Proceedings Underlying the Board's Claims

---

[1] All references to "Exhs." hereinafter refer to Exhibits attached to the Kapelman affidavit.

6. On March 23, 1993, the Board issued its Decision and Order ("Board Order")

in Board Case No. 29-CA-14548, *et al.* [310 NLRB 777], adopting the Decision of an

Administrative Law Judge ("ALJD") finding that Domsey Trading, Domsey Fiber and

Domsey Sales ( collectively referred to hereinafter as "Domsey") constituted a single

employer and had committed various unfair labor practices violative of the National

Labor Relations Act [29 U.S.C. Sec. 151, *et seq.*, ("the Act")] by, *inter alia*, unlawfully

discharging various employees and refusing to reinstate 202 unfair labor practice

strikers (collectively, "the discriminatees").[2] The Board Order directed Domsey, and

their officers, agents, successors, and assigns, to, *inter alia*, offer immediate and full

reinstatement to the discriminatees and make them whole for any loss of earnings or

other benefits they may have suffered as a result of Domsey's unlawful actions.

[Kapelman Aff. para. 2].

7. On February 18, 1994, the United States Court of Appeals for the Second

Circuit entered its judgment ("Second Circuit Judgment") enforcing the Board Order in

full.  [16 F.3d 517 (2d. Cir. 1994)].  [Kapelman Aff. para. 3].

8. On October 14, 1999, an Administrative Law Judge issued a Supplemental

Decision ("Supplemental ALJD") finding that Domsey's backpay liability to its employees

pursuant to the Second Circuit Judgment totaled $1,070,066.67, plus interest.[3]  The

---

[2]  The ALJ found as follows with respect to the unlawful acts committed: "(t)he violations found herein are egregious and widespread and demonstrate that (Domsey) has a general disregard for its employees' fundamental statutory rights."  310 NLRB 777, 812. [Kapelman Aff. para. 2 & note 1].
[3]  The Supplemental ALJD calculated the backpay owed to be $1,075,614.30; however, because the Board subsequently determined that that amount was incorrect due to an arithmetical error, the correct (lower) amount is utilized herein.  [Kapelman Aff. para 4 & note 4].

Supplemental ALJD is pending review before the Board.[4]   For purposes of this case, the Board is seeking relief based on backpay due and owing in the amount of $914,784.37, plus accrued interest.[5]  [Kapelman Aff. para.4].

9.  On August  11, 2010, the Regional Director of the Board's Brooklyn, New York Regional Office (Region 29) issued a Notice of Hearing ("Notice of Hearing") alleging, *inter alia*, that Arthur Salm, Peter Salm,  and Fortuna Edery, individually and as Executrix of the Estate of Albert Edery, deceased,[6] are derivatively liable for compliance with the remedial provisions of the Second Circuit Judgment requiring Domsey to make the discriminatees whole for the financial losses suffered by them as a result of

---

[4]  On September 30, 2007 and September 25, 2008, respectively, the Board did issue a Supplemental Decision and Order [351 NLRB 824] and a Second Supplemental Decision and Order [353 NLRB No. 12], altering the Supplemental ALJD's backpay findings and reducing the amount of Domsey's backpay obligations to $914,784.37, plus accrued interest.  On June 17, 2010, the United States Supreme Court issued New Process Steel, L.P. v. NLRB, ___ S. Ct. ___, 2010 WL 2400089, which held that the Board did not have authority to issue decisions with only two sitting members.  The Board's Second Supplemental Decision and Order was issued by a two-member Board. In light of New Process Steel, the Second Circuit denied the Board's application for enforcement of its supplemental orders as "premature."  Consistent with New Process Steel, the recently constituted five-member Board is currently reviewing the Second Supplemental Decision and Order.  It is the lower backpay amount under the Board's Supplemental and Second Supplemental Decisions and Orders that forms the basis for the relief in this matter.  [Kapelman Aff. para. 4 and notes 5 and 6].

[5]  As noted in footnote 4, supra, the Board's Supplemental Decision and Order and Second Supplemental Decision and Order reduced the amount of Domsey's backpay liability to $914,784.37, plus accrued interest.  [Kapelman Aff. para. 4 and notes 5 and 6].

[6]  As will be discussed infra, Albert Edery, as an officer and owner of Domsey, is alleged to be derivatively liable for Domsey's debt to the Board.  However, Albert Edery died on February 15, 2006.  Thus, Fortuna Edery, as Executrix of Albert Edery's Estate, is liable for Albert Edery's derivative liability for Domsey's debt to the Board.  For purposes of this application, any reference to Albert Edery and his liability to the Board for Domsey's debt also implicates Fortuna Edery as Executrix of Albert Edery's Estate.  In addition, as a result of Albert Edery's death,  monies were fraudulently conveyed to Fortuna Edery.  It is these funds that form the basis of Fortuna Edery's individual liability. [Kapelman Aff. paras. 15, 23 & 24].

Domsey's unlawful actions. [Kapelman Aff. paras. 23 & 24]. If contested, the personal liability of these three individuals will be litigated in a separate proceeding before an Administrative Law Judge, whose decision will be subject to review by the Board and, thereafter, by the United States Court of Appeals.

### B. The Bases for the Personal Liability of Arthur Salm, Peter Salm and Fortuna Edery.

**Background Facts to Establish Personal Liability.**

10. On January 9, 2002, Domsey Trading, without notification to the Board, sold its primary place of business, the Kent Avenue property, and shortly thereafter vacated the premises.[7] [Kapelman Aff. para. 5].

11. Domsey Trading received the net amount of $9,062,082.86 from the sale of the Kent Avenue property. [Kapelman Aff. paras. 9 & 10].

12. On January 10, 2002, the entire proceeds of the sale of the Kent Avenue property ($9,062,082.86) were deposited into Domsey Trading's operating account at North Fork Bank, Account # xxxxxx9216. [Kapelman Aff. para. 10].

13. Within days following the sale of the Kent Avenue property, Arthur Salm, as signator, issued four checks (totaling $7,980,387.71) against Domsey Trading's operating account at North Fork Bank, to the following recipients, in the amounts indicated:

      1. Arthur Salm  - $3,262,966.21;

      2. Peter Salm  - $  141,868.10;

---

[7] Domsey Trading owned the Kent Avenue property and Domsey Fiber leased the property. Edery-Salm Associates owned adjoining property that was sold at the same time as the Kent Avenue property. Edery-Salm Associates is not a party in the instant matter. [Kapelman Aff. para. 5, n. 8].

5

3.  Peter Salm   -  $    20,173.55;

4.  Albert Edery  -  $4,555,379.85.

[Kapelman Aff. para.11].

14.  At the time of the distributions described in paragraph 13 above, the recipients of said distributions held the following positions and ownership interests in Domsey Trading:

a.  Arthur Salm  - President, and 48% shareholder

b.  Peter Salm   - Treasurer, Manager in charge of day-to-day operations, and minority shareholder

c.  Albert Edery  - Vice-President and majority shareholder

[Kapelman Aff. para 12].

15.  At the time the proceeds from the sale of the Kent Avenue property were distributed to Arthur Salm, Peter Salm and Albert Edery, as described in paragraph 13 above, the Second Circuit Judgment and the Supplemental ALJD had issued and were in full force and effect.  (See paragraphs 6-8, supra).

16.  Arthur Salm, Peter Salm and Albert Edery took no steps to set aside or preserve any of the proceeds of the sale of the Kent Avenue property in order to ensure Domsey's ability to satisfy its monetary liability pursuant to the Second Circuit Judgment and the Supplemental ALJD.  [Kapelman Aff. paras. 13, 19].

17.  When questioned under oath regarding the January 2002 distribution of the proceeds of the sale of the Kent Avenue property, Arthur Salm, President of Domsey Trading, could not proffer and/or support by documentary evidence any legitimate business justification for the failure to set aside and preserve proceeds from the sale of

the Kent Avenue property sufficient to satisfy Domsey's obligations under the Second Circuit Judgment and Supplemental ALJD. [Kapelman Aff. paras. 17, 18].

18. The distribution of the proceeds from the sale of the Kent Avenue property described above in paragraph 13 rendered Domsey Trading insolvent, in that, as a result of that distribution, the value of Domsey Trading's assets was reduced to less than the amount of its backpay liability owed to the Board pursuant to the Second Circuit Judgment and the Supplemental ALJD. [Kapelman Aff. para. 14].

19. On October 28, 2009, Domsey Trading Corporation was dissolved by proclamation. [Kapelman Aff. para. 8].

**Personal Liability of Arthur Salm, Peter Salm, and Albert Edery.**

20. Based upon the facts set forth in paragraphs 10 through 19, there is reasonable cause to believe that Domsey's corporate veil should be pierced to hold Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, personally liable for the debts owed to the Board by Domsey pursuant to the Second Circuit Judgment and Supplemental ALJD. *See, e.g.*, A.J. Mechanical, Inc., 352 NLRB No. 108 (2008), enfd. 186 LRRM 2224 (11th Cir. 2009); D.L. Baker Inc. t/a Baker Electric, 351 NLRB No. 35 (2007); White Oak Coal Co., 318 NLRB 732 (1995), enf. 81 F.3d 150 (4th Cir. 1996).

21. Because Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, are personally liable for the debts of Domsey owed to the Board, they are jointly and severally liable to the Board in the amount of $2,393,618.90, to remedy the violations of the Act.

7

(a)    As discussed in paragraph 9, <u>supra</u>, a Notice of Hearing issued on August 11, 2010 alleging, <u>inter alia</u>, that Arthur Salm, Peter Salm, and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, are personally liable to the Board for the monetary amounts owed by Domsey. The facts supporting the liability of Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, are discussed, <u>supra</u>, at paras. 10 through 19. [Kapelman Aff. para. 23].

(b)    The total amount of backpay and interest owed, jointly and severally, by Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, as of August 1, 2010, is $2,176,017.19, consisting of $914,784.37 in backpay and $1,261,232.82 in interest. Additionally, pursuant to 28 U.S.C. §3011, the Board is entitled to recover a surcharge equal to 10% of the amount owed, or $217,601.71. Therefore, the total amount due and owing to the Board from Respondents Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, jointly and severally, is $2,393,618.90.[8] [Kapelman Aff. para 23].

**Personal Liability of Fortuna Edery**

22. Albert Edery deposited the distribution he received from the proceeds of the sale of the Kent Avenue property ($4,555,379.85) into an account maintained jointly with his wife, Fortuna Edery, at Merrill Lynch. [Kapelman Aff. para. 15(a)].

---

[8] If necessary, the Board will appropriately offset amounts collected by Respondents to ensure that the total amount collected in this proceeding not does exceed the total amount due and owing, $2,393,618.90.

23.  Upon Albert Edery's death in February 2006, the ownership of his portion of the sale proceeds ($2,277,689.92) was transferred to his widow, Fortuna Edery who, by operation of law, became the sole owner of the account previously held jointly with Albert (see para. 22, supra). [Kapelman Aff. para. 15(b) and (c)].

24.  The transfer of the sale proceeds from the joint account of Albert Edery and Fortuna Edery to the sole account of Fortuna Edery rendered Albert Edery's estate insolvent, in that as a result of the transfer of those proceeds into Fortuna Edery's sole ownership, the value of the assets of Albert Edery's estate became less than the amount of Domsey's and Albert Edery's backpay liability owed to the Board pursuant to the Second Circuit Judgment and the Supplemental ALJD. [Kapelman Aff. para. 15(d)].

25.  Based upon the facts set forth in paragraphs 22 through 24, the Board has reasonable cause to believe that the transfer of ownership of Albert Edery's share of the sales proceeds from the joint account of Albert and Fortuna Edery to the sole account of Fortuna Edery ($2,277,689.92) constituted a fraudulent conveyance under New York Debtor and Creditor Law, Section 273.  See, e.g., Granwell v. Granwell, 20 N.Y.2d 91 (Court of Appeals N.Y. 1967).

26.  Respondent Fortuna Edery is also individually liable to the Board in the amount of $2,277,689.92.  More specifically, as discussed in paragraph 9, supra, a Notice of Hearing issued on August 11, 2010 alleging, inter alia, that Fortuna Edery is liable in the amount fraudulently conveyed to her at the time of Albert Edery's death.  As described at paras. 22 through 25, supra, this amount is $2,277,689.92 [Kapelman Aff. paras. 15, 24].[9]

---

[9]  See footnote 8, supra.

9

## III. GROUNDS FOR PREJUDGMENT RELIEF

27. The Board has reasonable cause to believe that Domsey, Arthur Salm, Peter Salm, and Fortuna Edery, individually and as Executrix of the Estate of Albert Edery, deceased, have or are "about to assign, dispose, remove, conceal, ill treat, waste, or destroy property" and/or have or are "about to convert [their] property into money, securities, or evidence of debt in a manner prejudicial to the United States" "with the effect of hindering, delaying, or defrauding the United States." (28 U.S. C. § 3101(b)(1)(B)(C)). This belief is based upon the following facts:

(a) See facts alleged in paras. 10 through 19, and 22 through 24, supra.

(b) During the course of the Board's litigation against Domsey, Domsey repeatedly advised the Board that it had no assets; and Domsey sold its major asset, the Kent Avenue property, and ceased operating, without notification to the Board. [Kapelman Aff. paras. 5, 8].

(c) Given that Domsey was rendered insolvent by the dissipation and diversion of its assets (*i.e.* the proceeds from the sale of the Kent Avenue property) to corporate principals Arthur Salm, Peter Salm and Albert Edery, that those assets were thereafter commingled with their individual personal accounts and utilized for their personal benefit, and that the proceeds were distributed to Arthur Salm, Peter Salm and Albert Edery without fair consideration, the Board has reasonable cause to believe that the corporate veil will be pierced to find Arthur Salm, Peter Salm and Albert Edery/Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, jointly and

10

severally liable to satisfy Domsey's monetary liability to the Board, pursuant to the Second Circuit Judgment and Supplemental ALJD.

      (d)    Given that Albert Edery's estate was rendered insolvent upon his death by the transfer of the sale proceeds from his joint account with his wife, Fortuna Edery, to her sole account, the Board has reasonable cause to believe that the transfer constituted a fraudulent conveyance under New York Debtor and Creditor Law, Section 273, and that Fortuna Edery will be found liable to satisfy Domsey's monetary liability to the Board, pursuant to the Second Circuit Judgment and Supplemental ALJD, in the amount of $2,277,689,92 (representing Albert Edery's share of the joint account).

      (e)    Domsey's unlawful conduct giving rise to the Board's backpay claim against it; its claims of insolvency and inability to pay the Board's backpay claim; the sale of the Kent Avenue property without notification to the Board and without setting aside any funds to pay the Board's backpay claim; the diversion of the sales proceeds by principals Arthur Salm, Peter Salm and Albert Edery, into their own personal accounts; the failure of Domsey to produce an accounting of those proceeds and/or fair consideration being given; and Arthur and Peter Salm's subsequent commingling of these proceeds with various different personal accounts [Kapelman Aff. paras. 20 and 21(c)], as well as Albert Edery's fraudulent transfer of funds to the sole account of Fortuna Edery upon his death; all demonstrate the likelihood that if Domsey has any assets, they will soon be dissipated, and that the individual Respondents will further conceal, dissipate, dispose or misuse the diverted Domsey proceeds, thereby frustrating the Board's compliance efforts, and rendering any liquidated judgment that is eventually entered in this matter against Respondents unenforceable.  It is thus

necessary and appropriate to provide pre-judgment relief in this matter, pursuant to 28 U.S. C. Secs. 3101, *et seq*.

## IV. REQUEST FOR PREJUDGMENT GARNISHMENT

28. The Board reasonably believes that Respondent Arthur Salm has a substantial nonexempt interest in property (excluding earnings) that is in the possession, custody, or control of the Garnishee, Northern Trust Bank, which should be garnished and held in escrow by the Board, pending the final liquidation of the Board's claim against him. [Kapelman Aff. para. 20(g)]].

29. The Board reasonably believes that Respondent Peter Salm has a substantial nonexempt interest in property (excluding earnings) that is in the possession, custody, or control of the Garnishee, Merrill Lynch, which should be garnished and held in escrow by the Board, pending the final liquidation of the Board's claim against him. [Kapelman Aff. para. 21(c)]].

30. The Board reasonably believes that Respondent Fortuna Edery has a substantial nonexempt interest in property (excluding earnings) that is in the possession, custody, or control of the Garnishee, Merrill Lynch, which should be garnished and held in escrow by the Board, pending the final liquidation of the Board's claim against her. More specifically, the Board has reason to believe that Merrill Lynch may have possession or control of property of Respondent Fortuna Edery in the form of one or more brokerage accounts. [Kapelman Aff. para. 15].

31. Respondents Domsey, Arthur Salm, Peter Salm, Fortuna Edery, as Executrix of the Estate of Albert Edery, deceased, and Fortuna Edery individually shall

12

be afforded an opportunity for a hearing, upon an appropriate request made pursuant to 28 U.S.C. Sec. 3101(d).

32. All statutory requirements for issuance of the prejudgment remedy set forth in 28 U.S.C. Secs. 3101 and 3104 have been satisfied.

33. No bond is required of the United States or its agencies (28 U.S.C. Sec. 3101(c)(3)).

34. Accordingly, the Board respectfully requests that this Court, pursuant to 28 U.S.C. Sec. 3104, issue pre-Judgment Writs of Garnishment against all property or moneys of Respondent Arthur Salm and Peter Salm held by Garnishees Northern Trust Bank and Merrill Lynch, respectively, in an amount not to exceed $ 2,393,618.90, and against all property or moneys of Respondent Fortuna Edery held by Garnishee Merrill Lynch in an amount not to exceed $ 2,277,689.92.

## V. REQUEST FOR PREJUDGMENT PROTECTIVE RESTRAINING ORDER

35. The Board seeks additional relief, in the form of a Protective Restraining Order against Respondents Domsey, Arthur Salm, and Peter Salm (collectively "Respondents"),[10] to the extent that the bank and brokerage accounts subject to garnishment through this proceeding (as well as any other accounts of Respondents that the Board may subsequently discover and successfully garnish) do not contain sufficient funds to satisfy the Board's monetary claim.[11] Thus, the Board seeks a Protective Restraining Order to supplement the Writs of Garnishment and to ensure its

---

[10] The Board is not seeking a PRO against Respondent Fortuna Edery at this time.
[11] The precise amounts of bank and brokerage accounts that will be garnished pursuant to the Writs of Garnishment sought by the Board will not be known until the Garnishees file answers to the Writs of Garnishment.

ability to obtain from Respondents full compliance with their monetary obligations pursuant to an eventual liquidated judgment.

The Board seeks through a Protective Restraining Order a requirement that Respondents provide the Board with a list of their assets and that Respondents be precluded from, inter alia, selling, transferring, converting, dissipating, and/or disbursing assets without first setting aside sufficient funds to cover the monetary liability of Respondents to the Board in the amount of $ 2,393,618.90

36.  Section 28 U.S.C. Sec. 3013 provides:

**Modification or protective order; supervision of enforcement**

The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order . . . , extending, or modifying the use of any enforcement procedure under this chapter.

37.  It is the Board's view that, in light of the past conduct of Domsey and its principals designed to avoid satisfying their monetary liability to the Board including their sale of Domsey's sole remaining asset and diversion of the proceeds to themselves for their own personal use, there is a substantial likelihood that Domsey's past violations of the Act will go unremedied because Respondents' assets will be further concealed, dissipated, disposed of or misused, so as to substantially impede the Board's efforts and ability to obtain Respondents' compliance with the remedial provisions of the Supplemental ALJD in this matter.  It is therefore essential that a Protective Restraining Order be granted to preserve assets that have been improperly transferred to, and concealed and/or dissipated by Respondents, assets that are necessary to ensure the Board's ability to obtain full compliance with the Second Circuit Judgment.

14

38. Accordingly, the Board respectfully requests that this Court, pursuant to 28 U.S.C. Sec. 3013, issue a protective order, requiring Respondents to provide a list of assets to the Board, and otherwise restraining Respondents from assigning, disposing, removing, and/or concealing their assets, unless and until $2,393,618.90 is deposited into an interest bearing escrow account maintained by the Board in the U.S. Treasury, subject to modification and proper set off upon the receipt of any funds garnished pursuant to the requested Writs of Garnishment, to be held in such account until such time as the Board's liquidated claim is enforced by a court judgment, or the parties mutually resolve by settlement the total amounts owed by Respondents. In this fashion, the Board's ability to obtain compliance with the Second Circuit's Judgment will be ensured, while at the same time ensuring that there will be no unreasonable impediment to the use, assignment, disposal, removal, and/or sale of any of property belonging to Respondents.

**WHEREFORE**, pursuant to 28 U.S.C. Secs. 3101 and 3104, the Board respectfully applies for issuance of a pre-judgment Writ of Garnishment against all property or moneys of Respondents Arthur Salm and Peter Salm held by the Garnishees Northern Trust Bank and Merrill Lynch, respectively, in an amount not to exceed $2,393,618.90; and for issuance of a pre-judgment Writ of Garnishment against all property or moneys of Respondent Fortuna Edery held by Garnishee Merrill Lynch in an amount not to exceed $2,277,689.92; and further applies, pursuant to 28 U.S.C. Secs. 3013 and 3101 for issuance of a pre-judgment Protective Restraining Order requiring, inter alia, that Respondents provide a list of assets to the Board and restraining and enjoining Respondents and all persons natural or corporate acting in

15

concert or participation with Respondents from assigning, disposing, removing, and/or concealing their assets, unless and until Respondents deposit the requested sums into an interest bearing escrow account maintained by the Board in the U.S. Treasury, subject to modification and proper set off upon the receipt of any funds garnished pursuant to the requested Writs of Garnishment, to be held until such time as the Board's liquidated claim is enforced by a court judgment, or the parties mutually resolve by settlement the total amounts owed by Respondents.

NATIONAL LABOR RELATIONS BOARD

By: _____

Aggie Kapelman
Field Attorney (AK 1213).
National Labor Relations Board
Two MetroTech Center North, Suite 5100
Brooklyn, New York 11201
(718) 330-7723

Elias Feuer (EF 8933)
Supervising Attorney
(718) 330-2148

Barbara A. O'Neill
Managing Attorney
(202) 273-2958

Helene Lerner
Trial Attorney
(202) 273-3738
National Labor Relations Board
Contempt Litigation and Compliance Branch
1099 14th Street, N.W., Suite 10700
Washington, D.C. 20570
Counsel for Petitioner

Dated at Brooklyn, New York
this 11th day of August, 2010.